### STEAMBOAT RARITAN vs. JOHN McCLOY.

A part owner of a boat, whether his right be absolute or as mortgagee, cannot acquire a lien on the boat for services rendered while he was such owner. He cannot sue the other part owners without giving the notice required by law—the proof of such notice devolves upon him, and is not to be negatived by the defendants.

### ERROR to St. Louis Court of Common Pleas.

CROCKETT & BRIGGS, *for Plaintiff, insist;*

That the verdict and judgment were against the evidence.

SPALDING & TIFFANY, *for Defendant, insist:*

1. There was no sufficient affidavit for obtaining a new trial on the ground of newly discovered evidence. No sufficient diligence was shown. 6 Mo. Rep., 600; Graham on New Trials. Furthermore, this point cannot arise, as the affidavit was not incorporated in the bill of exceptions.

2. The instruction asked by the defendant ought not to have been given,

First, Because it calls on the court to say that it is incumbent on plaintiff to prove that his interest in the boat had ceased; as if that were necessary to a recovery.

Second, Because it was legal that plaintiff should recover if his interest was merely a pledge for money loaned; and testimony was given that such was his ownership, which was not objected to.

3. The instruction given by the court was correct. It assumes as the law, that if the plaintiff was interested merely as mortgagee, or what is in substance the same, was invested with the legal title of an interest in the boat merely to secure to him the payment of money by him loaned to the boat, he might nevertheless sue the boat for wages, which proposition is a correct one.

And the act of Feb. 29, 1839, page 13, section 4, does not conflict with this position. It speaks of *joint owners*, who are really such *quasi partners*, and not of those who have an interest by way of mortgage or lien to secure a debt. A mortgagee would certainly not be precluded from suing the boat, if he happened to earn wages on her while he was mortgagee; nor would a person to whom a deed of trust were made. The estoppel is not in the way.

4. Again, the act of assembly does not prevent the former joint owner from sueing. It enacts that a *"joint owner"* may sue on giving notice to the joint owners of his intention so to do. But the plaintiff was not joint owner at the time the suit was brought, and had not been for a month; and even if he had been, the statute does not prohibit him from sueing, and if he had not given the notice, that fact should have been set up by way of defence.

5. The verdict was not against evidence in such a sense as to require the interference of the court, even supposing a former joint owner could not sue the boat for his demand accrued during the time he was part owner. Plaintiff was captain and clerk long enough to authorize the verdict, and the estoppel does not prevent plaintiff from showing for what purpose and how he was owner. If he was *owner* for the purpose of securing a debt of $500 due to himself, and for that object only, his deed given in evidence does not estop him from saying this.

6. The question whether the boat is liable for a claim accruing beyond the limits of the State of Missouri, does not arise in this case. As it was not made nor passed upon in the court below, this court cannot notice it.

SCOTT, J., *delivered the opinion of the Court.*

McCloy instituted proceedings under the statute concerning boats and vessels against the steamboat Raritan for services as captain of the said boat. At the February term, 1845, judgment was recovered for $376 25.

It appears that the steamboat Raritan, was in custody of the law at Cincinnati for debt, when McCloy made advances for her relief. It does not appear whether he purchased the boat or whether he took a mortgage upon it, or in what manner he secured his advances. A witness testified that he was told by Capt. Sheble, who was a captain on board of the boat, and Sam. Marks, that the plaintiff had advanced money to get the the boat out of difficulty, and was to hold her until he was repaid; but that the boat was still theirs. Sheble said he was the owner of the said boat, and Marks said the same, but that for some reason she stood in Marks' name. This took place about the 7th November, 1843. On the 7th November, 1843, McCloy executed a bill of sale for the steamer Raritan. This instrument recites that he sold seven-eighths of the hull of the boat to S. T. Marks; that on 8th September, 1843, he had enrolled her as owner of seven-eighths, at Cincinnati, Ohio. There was also an agree-ment between McCloy and Thomas W. Pollard, dated 11th September,

1843, by which McCloy engaged the services of Pollard as clerk of the Raritan, in which it is recited that McCloy is master and owner. The plaintiff, McCloy, commenced services as captain about the 1st September, 1843.

The court was asked to instruct the jury, in substance, that if they believed from the evidence that the plaintiff was owner, or part owner, of the boat, he could not recover.

The court instructed the jury that if they believe from the evidence that the plaintiff was owner or part owner of the Raritan during the time or any portion of the time for which he claims to be paid for services on said boat, he is not entitled to recover for such services, unless the jury believe from the evidence that such title was in the plaintiff as mortgagee for the purpose of securing the payment of money advanced by him for the boat.

It does seem that a bare statement of this case is sufficient for its determination. That an individual should hold himself out as the owner of a boat, sell it to another, and, after it has passed into the hands of a third person, should be permitted to attach that boat for services which he rendered whilst he himself was the owner, is very strange! Suppose he was only a mortgagee, of which there is no evidence, yet being a mortgagee in possession, and rendering services on the boat, so that she might earn the means of paying his debt, on no principle could those services become a lien on the boat, as they were rendered for himself. He being the owner for the time, he could not contract with himself. If McCloy was a part owner, he had no right to proceed against the boat without giving notice to his part owner. The right existing by statute, it could only accrue by a compliance with its terms, which only give it after twenty days notice. It was not necessary on the part of the boat to show that notice had not been given. It was the duty of the plaintiff to show it affirmatively.

The other Judges concurring, the judgment will be reversed.